FILED

2005 Jun-07  PM 03:30
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | |
|---|---|
| BIDEZ AND ASSOCIATES, INC., ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | CASE NO. 2:04-cv-02534-HGD |
| ) | |
| TRACY & CARBOY, et al., ) | |
| ) | |
| Defendants ) | |

## **MEMORANDUM OPINION**

Defendants have filed a Motion to Dismiss, Alternatively, Motion to Transfer [Doc. #8]. They ask that the court dismiss this action for lack of personal jurisdiction and improper venue, or to transfer this action to the United States District Court for the Northern District of Texas.

Plaintiff, Bidez and Associates, Inc., filed this action in the Circuit Court of Jefferson County, Alabama, on July 16, 2004, against defendants Tracy & Carboy and E. Todd Tracy. Defendants removed the action to federal court on August 24, 2004.

### **The Complaint**

Plaintiff alleges causes of action for breach of contract and work and labor performed. The complaint alleges that on November 16, 2000, defendants entered into a contract with plaintiff for plaintiff to provide professional services of biomechanical reconstruction and expert testimony regarding consulting, research,

testifying in depositions or court appearances, and fieldwork. Defendants agreed to pay plaintiff at an hourly rate of $275 for the services of Martha Bidez (President of Bidez and Associates), $125 for the services of Earle Bidez, and $50 for the services of Denise Whitaker. The rates were subject to change on 30 days' notice. Defendants also agreed to pay travel and out-of-pocket expenses, 1.5% per month late payment penalty, and all costs of collection including attorneys fees. The contract also provided that if payment was more than 60 days past due, all work by plaintiff would be suspended, and plaintiff would not be required to perform further work until the payment of all amounts due in full, plus a cash advance in an amount to be determined. The contractual relationship between plaintiff and defendants was uninterrupted through October 2003.

Plaintiff alleges that on August 25, 2003, defendants contacted plaintiff seeking immediate consulting work in a pending case. To accommodate defendants, plaintiff canceled all scheduled professional obligations for the week of August 26, 2003, and provided consulting services. Plaintiff sent defendants the customary monthly invoices on August 31, 2003, September 30, 2003, October 31, 2003, and November 30, 2003, for services rendered, but defendants failed to pay. The complaint alleges that as of November 18, 2003, defendants' unpaid balance was $68,602.78, $41,174.97 of that amount being past due.

Defendants sent a letter on December 2, 2003, disputing the October billing and asking plaintiff to review the bill. Plaintiff reviewed the bill and then tried to call defendants. When it was unable to contact defendants, plaintiff sent a letter dated

2

December 3, 2003, addressing defendants' objections.  After unsuccessful attempts to contact defendants by phone, plaintiff sent a fax and letter directing defendants to contact plaintiff or plaintiff would cancel the deposition in another case.  Defendants failed to contact plaintiff, so plaintiff canceled the deposition.  Plaintiff again attempted to collect the balance owed by an e-mail dated January 8, 2004, and defendants responded by e-mail on January 12, 2004, that when their audit was complete, plaintiff would be paid.  Plaintiff alleges that the outstanding balance owed by defendants as of June 30, 2004, was $79,610.45, including interest.

**The Motion to Dismiss or Transfer**

Plaintiff is a corporation organized and existing under the laws of the State of Alabama with its principal place of business in Birmingham, Alabama.  Defendant Tracy & Carboy is a partnership formed in the State of Texas with its principal place of business in Texas.  Defendant E. Todd Tracy is a resident of the State of Texas.

In the motion, defendants state that Tracy & Carboy is not a correct defendant. Instead, the correct name of the other defendant, with whom plaintiff contracted, is Law Offices of E. Todd Tracy, P.C., a professional corporation formed in the State of Texas with its principal place of business in the State of Texas.[1]  Defendants argue that the court lacks personal jurisdiction over each of the defendants because they have not conducted business in the State of Alabama and do not have sufficient

---

[1] Plaintiff states in its response to the motion to transfer that it intends to add Law Offices of E. Todd Tracy, P.C., as a defendant once the stay in this case is lifted.

minimum contacts with Alabama.  They assert that this action is due to be transferred pursuant to 28 U.S.C. § 1404(a), or dismissed or transferred pursuant to 28 U.S.C. § 1406(a).

In an affidavit submitted in support of the motion, Todd Tracy states that he is an attorney licensed to practice law only in Texas and has been such since 1987.  He avers that the correct name of the entity which retained plaintiff is Law Offices of E. Todd Tracy, P.C., of which Tracy is the sole shareholder.  Law Offices of E. Todd Tracy, P.C., is a Texas corporation with its principal office in Dallas, Texas.  It has no office in Alabama, and never has had any property, bank account, or other facility for transacting business in Alabama.  Tracy & Carboy is a partnership of professional corporations which shares office space.  He denies that Tracy & Carboy retained Bidez and Associates in any litigation prosecuted by his office and denies that Tracy & Carboy has anything to do with the dispute made the basis of this litigation.

Tracy also avers there never has been a signed contract or retainer agreement between Law Offices of E. Todd Tracy, P.C., and/or Tracy with Bidez and Associates and/or Martha Bidez.  Martha Bidez has worked as an expert in the area of biomechanical engineering on cases filed by Tracy's office in the past three or four years against automobile manufacturers.  Tracy declares that the majority of these cases were pending in Texas, with one case in Arkansas and two in North Carolina. He asserts that plaintiff was retained and paid in those cases by Law Offices of E. Todd Tracy, P.C., and not by Tracy, individually.

Tracy states he never has represented any party or anyone in litigation in Alabama, never has engaged in the practice of law in Alabama, never has entered a *pro hac vice* appearance in any Alabama litigation, and does not own property in Alabama. Tracy has been in Alabama on two occasions, which he states were solely for personal reasons. He denies ever having been to Alabama for any litigation or to meet and/or consult with any expert, including Martha Bidez of Bidez and Associates, to discuss any case-related matter.

Tracy denies ever offering Martha Bidez for deposition in Alabama; any depositions were taken at Tracy's office in Dallas, Texas. He states that Bidez's written expert opinions were received in his office in Dallas, Texas, and the vast majority of the time billed to his firm by plaintiff on cases for which Martha Bidez served as expert was for activities in Dallas, Texas. Further, Tracy maintains that all vehicles involved in litigation were inspected by Bidez and all technical documents received from automobile manufacturers were reviewed by Bidez in Dallas, Texas. He states that all invoices from plaintiff which are in dispute were received by his office in Dallas, and to the extent any decision not to pay an invoice was made, the decision was made by his office in Dallas.

Tracy also avers it would be extremely inconvenient for him, or anyone on his staff who may be a witness, to litigate this case in Alabama. Tracy's paralegal who assisted him in the cases in which Martha Bidez served as an expert works and resides in Dallas, and the invoices in question are at his office in Dallas. All files on cases in which Martha Bidez served as an expert witness are maintained in Dallas, Texas.

5

**Plaintiff's Response**

In response, plaintiff avers that defendants did enter into an agreement with plaintiff, on or about November 16, 2000, whereby plaintiff agreed to provide professional services of biomechanical reconstruction and expert testimony including consulting, research, testifying in depositions and court appearances, and performing fieldwork, in exchange for payment.  Plaintiff avers Martha Bidez performed services pursuant to this agreement, the majority of which took place in Jefferson County, Alabama.  Defendants regularly communicated with Martha Bidez at the offices of Bidez and Associates in Birmingham, via telephone conferences to discuss the status of the work in the cases and/or to request technical consultations to assist in the practice of product liability law.  Plaintiff contends that defendants have purposely established minimum contacts with the State of Alabama, the cause of action herein arising out of and related to those contacts, and have purposely availed themselves of the privilege of conducting activities in Alabama.  Plaintiff also avers that transfer of this action merely would switch inconvenience from one party to another.

In an affidavit in opposition to defendants' motions, Martha Bidez states that the vast majority of all biomechanical construction work she performs as a biomechanical engineer for Bidez and Associates occurs in plaintiff's offices in Birmingham, Alabama.  Further, her analytical work takes place in her office or home.  Clients regularly communicate with Bidez at her office in Birmingham.  Ms. Bidez states it is plaintiff's customary practice to provide each client with a contract outlining the agreed-upon business arrangement, and she believes Todd Tracy on

behalf of Tracy & Carboy and/or Law Offices of E. Todd Tracy, P.C., signed such a contract, but she does not have a copy in her possession.

According to plaintiff's records, Martha Bidez began working with defendants in December 2000 and continued to work with them on a monthly basis until November 2003. She participated as a biomechanical engineer in the evaluation of 42 cases for defendants during that time. She only conducted an initial evaluation in 12 of those cases. According to Bidez, the billing records of the other 30 cases "document the fact that over this three year time frame approximately 70% of all Bidez and Associates, Inc.'s professional fees were generated in the corporate offices of Bidez and Associates, Inc. located in Birmingham, Alabama." She also knows of at least one occasion on which Todd Tracy came to Birmingham and participated in a business meeting with her.

Plaintiff asserts that there is a *prima facie* case of jurisdiction and that there is a conflict in the factual averments in the affidavits submitted by the parties. Plaintiff argues that all reasonable inferences must be made in favor of plaintiff with respect to the dispute in the evidence. The disputed facts are whether Todd Tracy ever traveled to Alabama to meet with Martha Bidez and whether the majority of the time billed for Martha Bidez was for services in Alabama or Texas.

**Defendants' Reply**

In reply, defendants submit another affidavit from Todd Tracy, in which he explains the reason for one of his visits to Alabama. He states that on one occasion, he attended a Voices for Alabama's Children meeting. Martha Bidez was on the Board of Directors for Voices for Alabama's Children. The evening prior to the meeting, Tracy attended a party held by Bidez at her home with all the other individuals who were participating in the meeting the following day. He denies ever having participated in any business meeting with Bidez in Alabama regarding his law practice or any other meeting in Alabama with respect to his law practice.

DISCUSSION

**The Motion to Dismiss**

In support of their claim that the case should be dismissed under 28 U.S.C. § 1406(a) for improper venue and lack of personal jurisdiction, defendants contend that venue is proper only in a judicial district where the defendant resides, where a substantial part of the events or omissions giving rise to the claim occurred, or where personal jurisdiction exists in the absence of any other proper district. 28 U.S.C. § 1391(a).

When a plaintiff is seeking to establish a court's personal jurisdiction over an out-of-state defendant, the plaintiff must state sufficient facts in the complaint to support a reasonable inference that the defendant can be subjected to jurisdiction within the state in which the court sits. When a district court does not conduct an

8

evidentiary hearing on a motion to dismiss for lack of personal jurisdiction, the plaintiff must establish a *prima facie* case of personal jurisdiction over a non-resident defendant. *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990); *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988). The plaintiff can establish a *prima facie* case by presenting enough evidence to withstand a motion for directed verdict. *Id*. The facts as alleged in the complaint must be accepted by the court to be true, to the extent they are uncontroverted by the defendant's affidavits. *Id*. If the parties' evidence conflicts, the court must construe all reasonable inferences in favor of the plaintiff. *Id*.

## **<u>Personal Jurisdiction Analysis</u>**

The subject matter jurisdiction of this court is based on diversity of citizenship and amount in controversy, as provided in 28 U.S.C. § 1332. The United States Supreme Court has identified two types of personal jurisdiction, specific and general. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 411-15 nn. 8 & 9, 104 S.Ct. 1868, 1870-72 nn. 8 & 9, 80 L.Ed.2d 404 (1984). Specific personal jurisdiction arises when the defendant's contacts with the forum are related to the plaintiff's cause of action. *Madara v. Hall*, 916 F.2d 1510, 1516 n. 7 (11th Cir. 1990); *Williams Electric Co. v. Honeywell, Inc.*, 854 F.2d 389, 392 (11th Cir. 1988) (per

curiam).  The facts and allegations establish plaintiff is asserting this court has specific personal jurisdiction over defendants.[2]

A court engages in a two-part analysis to determine whether it has personal jurisdiction over a non-resident defendant.  *Cable/Home Communication Corp. v. Network Productions, Inc.*, 902 F.2d 829, 855 (11th Cir. 1990).  First, the state's long arm statute must offer a basis for the exercise of jurisdiction.  *Id.*  If so, the court must then determine whether there are sufficient "minimum contacts" to satisfy the Fourteenth Amendment's Due Process Clause, such that "maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 342, 85 L.Ed. 278 (1940)).

Alabama's long arm statute, Rule 4.2, Ala.R.Civ.P, provides in pertinent part:

**(a) Basis for Out-Of-State Service.**

(1)  *When Proper*.  Appropriate basis exists for service of process outside of this state upon a person in any action in this state when

(A) the person is, at the time of the service of process, either a non-resident of this state or a resident of this state who is absent from the state and

(B) the person has sufficient contacts with this state, as set forth in subdivision (a)(2) of this rule, so that

---

[2] In this case, there currently is a dispute about which of the defendants actually contracted with plaintiff.  Therefore, because this is a matter best left for later decision after development of the record, the court merely refers to "defendants" for convenience.

10

the prosecution of the action against the person in this state is not inconsistent with the Constitution of this state or the Constitution of the United States . . .

(2)   *Sufficient Contacts*.   A person has sufficient contacts with the state when that person, acting directly or by agent, is or may be legally responsible as consequence of that person

(A) transacting any business in this state;

* * * * * *

(I) otherwise having some minimum contacts with this state and, under the circumstances, it is fair and reasonable to require the person to come to this state to defend an action. The minimum contacts referred to in this subdivision (I) shall be deemed sufficient, notwithstanding a failure to satisfy the requirement of subdivisions (A)-(H) of this subsection (2), so long as the prosecution of the action against a person in this state is not inconsistent with the Constitution of this state or the Constitution of the United States.

The Supreme Court of Alabama has interpreted Alabama's long arm statute to be as "broad as the permissible limits of due process." *Alabama Waterproofing Co., Inc. v. Hanby*, 431 So.2d 141, 145 (Ala. 1983).

## Constitutional Due Process

Determining whether the assertion of personal jurisdiction over a non-resident defendant comports with due process also is a two-part analysis. *Madara v. Hall*, 916 F.2d 1510, 1515-16 (11th Cir. 1990).  First, the court must decide whether the defendant has established "minimum contacts" with the State of Alabama. *Id.* at 1516.

11

Second, the court must decide if the exercise of personal jurisdiction would offend

"'traditional notions of fair play and substantial justice.'" *Id.*

**Minimum Contacts**

To satisfy the requirement of minimum contacts for the exercise of personal

jurisdiction:

> The defendant's contacts with the applicable forum must
> satisfy three criteria. First, the contacts must be related to
> the plaintiff's cause of action or have given rise to it.
> Second, the contacts must involve "some act by which the
> defendant purposely availed itself of the privilege of
> conducting activities within the forum . . . , thus invoking
> the benefits and protections of its laws." Third, the
> defendant's contacts with the forum must be "such that [the
> defendant] should reasonably anticipate being haled into
> court there."

*Francosteel Corp. v. M/V Charm*, 19 F.3d 624, 627 (11th Cir. 1994) (quoting

*Vermeulen v. Renault, USA Inc.*, 985 F.2d 1534, 1546 (11th Cir. 1993), *cert. denied*,

508 U.S. 907, 113 S.Ct. 2334, 124 L.Ed.2d 246 (1993)). "The availability of specific

jurisdiction depends on the relationship among the defendant, the forum, and the

litigation." *Francosteel*, 19 F.3d at 627 (citing *Borg-Warner Acceptance Corp. v.

Lovett  & Tharpe, Inc.*, 786 F.2d 1055, 1057 (11th Cir. 1986)).

In this action, plaintiff contends that defendants have established minimum

contacts with Alabama by contracting with plaintiff for services which were

performed primarily in the State of Alabama and by visiting Alabama on one occasion

at which time the agreement between plaintiff and defendants was discussed.

It is clear that defendants' contacts with the State of Alabama are related to the plaintiff's cause of action and have given rise to this lawsuit. The court thus must decide if the contacts involve purposeful availment by defendants of the privilege of conducting activities within Alabama and if defendants' contacts with the Alabama are such that defendants should reasonably anticipate being haled into court here.

**Fair Play and Substantial Justice**

In *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985), the United States Supreme Court set out factors to be considered in determining whether the exercise of jurisdiction over a non-resident defendant would offend traditional notions of fair play and substantial justice. These factors are the burden on the defendant, the forum state's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the states in furthering fundamental substantive social policies.

Plaintiff has directed the court's attention to *Paul, Hastings, Panofsky & Walker, LLP v. City of Tulsa, Oklahoma*, 245 F.Supp.2d 1248 (N.D.Ga. 2002). In this case, a Georgia law firm sued the City of Tulsa for breach of contract for alleged nonpayment of legal fees. The city sought dismissal of the suit on the basis of lack of personal jurisdiction and improper venue. Alternatively, the defendant sought a transfer of venue to Oklahoma. The court held that it had specific personal

jurisdiction over the defendant, that venue was proper and that transfer was not warranted.

The court found that the first prong of the test was easily satisfied because Tulsa entered into a contract with the firm's Atlanta office to assist in a class action lawsuit in exchange for payment. When Tulsa refused to pay for the legal services, the firm withdrew from representation and filed suit for breach of contract. In analyzing the second factor, the court stated that to determine if a defendant has purposefully availed itself of the privilege of conducting business in a state, "the court must evaluate the contract negotiations, the contemplated future consequences of the relationship, the terms of the contract and the parties' actual course of dealing." 245 F.Supp.2d at 1256, citing *Burger King*, 471 U.S. at 479, 105 S.Ct. at 2185.

The court found that Tulsa initiated contact with Paul, Hastings to create a continuing relationship and obligation with a citizen of another state, based on the firm's national reputation. Tulsa also directed the law firm to hire additional help to work on the Oklahoma litigation and approved the hires. As for the "contemplated future consequences," both the plaintiff and the defendant knew that significant amounts of work would be conducted in Atlanta, with the plaintiff estimating that 90% of the work done on Tulsa's case took place in Atlanta. Thus, as in *Burger King*, Tulsa entered into a long-term, continuing and structured relationship with the Georgia law firm, and that the lawsuit was a direct result of a contract which contemplated a substantial connection to Georgia. In addition, the actual course of dealings between the parties lasted almost four years, during which time Tulsa

14

contacted the Georgia attorneys with telephone calls, e-mails and letters.  Payment was mailed to the Atlanta office, and the only complete set of litigation files was maintained in Atlanta.  Tulsa also visited the firm in Georgia on at least one occasion. Therefore, the court found that Tulsa's contacts with Georgia were not "random, fortuitous or attenuated" but "deliberate and purposeful."  *Id.* at 1257.

With regard to the "fair play and substantial justice" test, the court quoted from *Burger King* that

> where a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.

*Id.* at 1258, quoting *Burger King*, 471 U.S. at 477, 105 S.Ct. at 2184-85.  The court rejected Tulsa's arguments that it would place a tremendous burden on Tulsa to litigate in Georgia and that Georgia had little interest in the dispute.  The court found that although it would be inconvenient for Tulsa to travel, it would be no less inconvenient for the plaintiff and modern improvements in transportation and communication lessened any burden.  Additionally, Georgia had a "significant interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors."  *Id.* at 1259 (internal quotations omitted).

This case is virtually indistinguishable from the *Paul, Hastings* case. Defendants contacted plaintiff for the purpose of obtaining expert consulting services for cases they were litigating.  The parties entered into some kind of agreement and continued their business relationship over a period of approximately three years.

15

Plaintiff consulted on 42 cases over that period of time, and defendants frequently communicated with plaintiff via telephone about those cases. While defendants contend that the majority of the work performed by plaintiff took place in Texas, plaintiff asserts that about 70% of the billings to defendants were for work performed in Alabama. Because the court is required to construe all reasonable inferences in favor of plaintiff for purposes of this motion, plaintiff's assertion of the location of the work billed to defendants is accepted. Defendants created a continuing relationship and obligation with an Alabama citizen, and both plaintiff and defendants knew that significant amounts of analysis would be conducted in Alabama. Todd Tracy admits that he traveled to Alabama and saw Martha Bidez at that time; it is not clear whether they discussed any cases on which plaintiff was working for defendants.

Further, it would place as much of a burden on plaintiff to litigate in Texas as it would on defendants to litigate in Alabama. The State of Alabama indeed has an interest in providing a forum for redress of injuries to its residents by residents of another state, when the out-of-state residents have purposefully reached out to create and maintain a relationship with an Alabama resident.

According to 28 U.S.C. § 1391(a),

> A civil action wherein jurisdiction is founded only on diversity of citizenship may, except as otherwise provided by law, be brought only in (1) a judicial district where any defendant resides, if all defendants reside in the same State, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, . . . or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced,

> if there is no district in which the action may otherwise be brought.

Title 28 U.S.C. § 1406(a) provides that a district court in which a case is filed in the improper venue may dismiss, or in the interest of justice, transfer the case to any district or division in which it could have been brought.

The undersigned finds that a substantial part of the events giving rise to plaintiff's claim took place in the Northern District of Alabama.  Defendants hired plaintiff, based in Birmingham, to provide expert consulting, research and testimony.  Plaintiff avers that 70% of the hours billed to defendants were for work in Birmingham.  Defendants stayed in contact with Martha Bidez over the course of approximately three years on 42 cases.  Defendants also sent payment to plaintiff's offices in Birmingham.

Based on the foregoing facts and inferences, defendants' motion to dismiss this action for lack of personal jurisdiction and improper venue is due to be denied.

**The Motion to Transfer**

Defendant seeks, in the alternative, a transfer of this action to the Northern District of Texas, pursuant to 28 U.S.C. § 1404(a).  The purpose of 28 U.S.C. § 1404(a) is to allow federal district courts to transfer cases between districts where both are technically appropriate venues for the action but where one district is clearly superior as a site for resolving the controversy.  Considerations of judicial economy, witnesses, and other matters dictate the most convenient forum for adjudicating an

action, and § 1404(a) provides the vehicle by which an action may be transferred to that most convenient forum.  As the Supreme Court explained in *Stewart Organization v. RICOH Corporation*, 487 U.S. 22, 29, 108 S.Ct. 2239, 2244, 101 L.Ed.2d 22 (1988):

> Section 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to an "individualized, case-by-case consideration of convenience and fairness." *Van Dusen v. Barrack*, 376 U.S. 612, 622, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).  A motion to transfer under § 1404(a) thus calls on the district court to weigh in the balance a number of case specific factors.

In the language of the section itself, a transfer of an action from one district in which venue is proper to "any other district or division where it might have been brought" turns on "the interest of justice" as encompassed within such case specific factors as the convenience of witnesses and parties.  *Id.* at 30-31, 108 S.Ct. at 2244-45.  The primary purpose of 28 U.S.C. § 1404(a) is to afford defendants protection when the plaintiff's choice of forum would render the litigation oppressively expensive, inconvenient, difficult, or harassing to defend.  *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964).

In deciding whether a change in forum is warranted, a court must consider the following factors:  (1) plaintiff's initial choice of forum; (2) convenience of the parties and witnesses; (3) relative ease of access to sources of proof; (4) availability of compulsory process for witnesses; (5) location of relevant evidence; (6) financial ability to bear the cost of the change; (7) and all other practical problems that make

trial of the case easy, expeditious, and inexpensive. *See Tampa Bay Storm, Inc. v. Arena Football League, Inc.*, 932 F.Supp. 281, 282 (M.D.Fla. 1996); *Jasper Corp. v. National Union Fire Insurance Company*, 1999 WL 781808 (M.D.Fla. Sept. 9, 1999). *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir.1996). "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. 1981). "Under normal circumstances, federal courts will accord great deference to the plaintiff's choice of forum if the forum is in the district in which the plaintiff resides." *Owens v. Blue Tee Corp.*, 177 F.R.D. 673, 679 (M.D.Ala. 1998), citing *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989).

In determining "the interests of justice," a court should decide in which forum "judicial resources could most efficiently be utilized and the place in which the trial would be most 'easy, expeditious and inexpensive.'" *Id.*, quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055, 1062 (1947). The Supreme Court has outlined several criteria to consider including access to evidence, availability of witnesses, the cost of obtaining witnesses, and the possibility of a jury view. *Gulf Oil Corp.*, 330 U.S. at 508, 67 S.Ct. 839. "The most important factor in passing on a motion to transfer under § 1404(a) is the convenience of the witnesses"; the forum in which the majority of material principal witnesses reside is the most convenient forum. *Insuracorp, Inc. v. American Fidelity Assur. Co.*, 914 F.Supp. 504, 506 (M.D.Ala. 1996); *see also Merritt v. Jay Pontiac-GMC Truck, Inc.*, 952 F.Supp.

754, 756 (M.D.Ala. 1996); *Hutchens v. Bill Heard Chevrolet Co.*, 928 F.Supp. 1089, 1091 (M.D.Ala. 1996).

In *American Aircraft Sales Intern., Inc. v. Airwarsaw, Inc.*, 55 F.Supp.2d 1347 (M.D.Fla. 1999), the court stated:

> The standard for transfer under § 1404(a) allows broad discretion of the trial court. *See Codex Corp. v. Milgo Electronic Corp.*, 553 F.2d 735, 737 (1st Cir. 1977). Congress authorized courts to transfer the venue of a case in order to avoid unnecessary inconvenience to the litigants, witnesses, and the public, and to conserve time, energy, and money. *See Tampa Bay Storm*, 932 F.Supp. at 282. The movant has the burden of persuading the trial court that transfer is appropriate and should be granted. *See id.*
>
> In order to overcome the presumption in favor of Plaintiff's choice of forum, the movant must show the balance of convenience is "strongly in favor" of the transfer. . . . The decision whether to transfer venue is within the discretion of the trial court, and each case should be decided on its particular facts. *See Brown v. Connecticut Gen. Life Ins. Co.*, 934 F.2d 1193, 1197 (11th Cir. 1991) (quoting *Howell*, 650 F.2d at 616). In answering this question, this Court must consider the following factors: Plaintiff's initial choice of forum, convenience of the parties and witnesses, relative ease of access to sources of proof, availability of compulsory process for witnesses, location of relative documents, financial ability to bear the cost of the change, and all other practical problems that make trial of the case easy, expeditious, and inexpensive. *See id.* . . . The courts will not disturb a plaintiff's selected venue merely to shift inconveniences between the parties.

55 F.Supp.2d at 1351-52.

In this case, plaintiff has chosen this forum for litigation, and it is the forum in which plaintiff has its principal office. It appears there would be as many witnesses in Alabama as in Texas, in addition to documentary evidence. There has been no

argument that defendants are unable to bear the cost of litigating in Alabama.  Further, transferring this action to Texas would merely shift the inconvenience from defendants to plaintiff.  The undersigned can discern no other practical problems that would make trial of the case anything other than easy, expeditious, and inexpensive in this district.  Given the deference accorded plaintiff's choice of forum, defendants have failed to show that the balance of convenience is "strongly in favor" of the transfer or that other considerations clearly outweigh plaintiff's choice of Alabama as the forum for this litigation.

Based on the foregoing, defendants' alternative motion to transfer this action to the United States District Court for the Northern District of Texas is due to be denied.

A separate order in conformity with this Memorandum Opinion will be entered contemporaneously herewith.

DONE this 7th day of June, 2005.


HARWELL G. DAVIS, III
UNITED STATES MAGISTRATE JUDGE

21